## DE GOLDSCHMIDT–ROTHSCHILD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 231, Docket 20905.

Circuit Court of Appeals, Second Circuit.

June 17, 1948.

---

Maurice Austin, of New York City, for petitioner-appellant.

Theron Lamar Caudle, Asst. Atty. Gen., and Sewall Key, Lee A. Jackson and Hilbert P. Zarky, Sp. Assts. to Atty. Gen., for respondent, Commissioner of Internal Revenue.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question raised by this appeal is whether the Commissioner of Internal Revenue and the Tax Court were justified in concluding that the subject-matter of a transfer by the taxpayer was not exempt from gift taxes under the provisions of Article 2 of Regulations 79 and Section 86.2 of Regulations 108 of the Bureau of Internal Revenue, which, under authority of 31 U.S.C.A. § 750, provide that a gift of a bond, note or certificate of indebtedness issued by the Federal Government prior to March 1, 1941, if made by a non-resident alien not engaged in business in the United States, is not subject to tax. The pertinent clauses of Section 750, supra, and of the Regulations appear in the margin.[1]

The taxpayer had transferred in trust certain U. S. Treasury Notes under what the Tax Court held to have been a prearranged plan that they should be sold and the proceeds reinvested in other property having a higher income yield but not of a tax-exempt nature.

The taxpayer was a naturalized citizen of France who was admitted to the United States about October 17, 1940, as a temporary visitor under a certificate of admission setting forth that she was a non-immigrant. She was at no time engaged in business in the United States. When she came here she had assets in this country consisting of about $300,000 marketable American securities on deposit with Brown Brothers Harriman & Company, New York City, which she caused to be transferred to a custodian account for herself as the sole owner thereof. At the time of her arrival, Alexander Van Marx, her cousin by marriage, was living in New York City, had been a banker in Holland, had general knowledge of American securities and was relied on by her for advice in her financial affairs. He recommended that she transfer

---

[1] 31 U.S.C.A.

"Sec. 750. Bonds and certificates of indebtedness beneficially owned by nonresident aliens not engaged in business in the United States exempt from taxation. Notwithstanding the provisions of Sections 745, 747, 752-754(b), 757, 758, 760, 764-766, 769, 771, 773, 774 and 801 of this title, or of any other law, bonds, notes and certificates of indebtedness of the United States and bonds of the War Finance Corporation shall, while beneficially owned by a non-resident alien individual, or a foreign corporation, partnership, or association, not engaged in business in the United States, be exempt both as to principal and interest from any and all taxation imposed on July 9, 1918, or thereafter by the United States, any State, or any of the possession of the United States, or by any local taxing authority."

Regulations 79

"Article 2. Transfers reached. * *

A gift of a bond, note or certificate of indebtedness issued by the Federal Government if made by a non-resident alien, not engaged in business in the United States, is not subject to the tax. * * " Article 2 of Regulations 79 (as amended by T.D. 5041, 1941—1 C.B. 438, March 1, 1941):

"Article 2. Transfers reached. * * However, a gift of a bond, note or certificate of indebtedness, issued by the Federal Government prior to March 1, 1941, if made by a non-resident alien not engaged in business in the United States is not subject to the tax. * * * "

[Section 86.2 of Regulations 108, also relating to the gift tax (promulgated July 30, 1943, superseding Regulations 79), mentioned in respondent's notice of deficiency (App. 5), contains provisions identical with those of Article 2 of Regulations 79 (as amended by T.D. 5041), above-quoted.]

portion of her assets in this country in trust for the benefit of her two minor children Gilbert and Antoinette who had announced their desire to remain permanently in the United States. He also recommended that the Fiduciary Trust Company of New York be made the trustee of the two trusts. The taxpayer accepted his advice and decided to create two trusts each having a corpus of approximately $100,000. In October or November 1940 Van Marx introduced her to a trust officer who suggested that if a sufficient amount of her assets were converted into United States Government bonds or treasury notes the principal amount to be transferred to the two trusts would qualify as tax-exempt gifts by a non-resident alien as provided by law.

Between January 14 and January 22, 1941, the Fiduciary Trust Company, pursuant to the last mentioned suggestion, sold securities belonging to the taxpayer and with the proceeds purchased at an aggregate principal cost of $189,986.58

$100,000 United States 1% Treasury Notes, and

86,900 ¾% Treasury Notes.

On February 19, 1941, the Trust Company transferred to itself as trustee for the taxpayer's children under the two trusts which had been created by her the following securities:

Gilbert De Goldschmidt-Rothschild Trust

$50,000 United States 1% Treasury Notes, Series C, due September 15, 1944.

43,450 United States ¾% Treasury Notes, Series A, due March 15, 1945.

Antoinette Kuhlman Trust

$50,000 United States 1% Treasury Notes, Series C, due September 15, 1944.

43,450 United States ¾% Treasury Notes, Series A, due March 15, 1945.

The two trust instruments contained similar provisions, except as to the names of the beneficiaries, one trust being for the benefit of petitioner's son, then 15 years of age, and the other being for the benefit of petitioner's daughter, then 17 years of age. Each trust agreement provided that petitioner, as "a citizen and resident of France temporarily living in New York City," assigned and transferred U. S. Government securities, which were specifically described as above set out, to the trustee "irrevocably," to pay the net income to the beneficiary for life and after his or her attaining the age of 21 years to deliver to him or her any part or all of the principal requested by him or her. The contingent remaindermen did not include petitioner. The trusts could not be altered, amended, or modified. The trustee was given broad powers to manage, sell, invest, and reinvest the trust property, and to make investments in income or non-income producing property; but it was provided that no purchase, sale, or exchange should be made for the trust fund without approval of the donor during the minority of the beneficiary or the latter's approval after attaining majority. The trustee was given absolute discretion to retain any investment or to hold any uninvested property for such period as it might determine. The trustee could, in its absolute discretion if it deemed such action advisable by reason of any emergency or any change of circumstances, pay over the whole or any part of the principal to the beneficiary entitled at the time to receive the income from such property. The trusts also provided that the donor could remove the trustee and appoint a successor.

Subsequent to February 19, 1941 the United States Treasury notes transferred to the two trusts on that date were sold from time to time by the trustee and the proceeds reinvested in domestic stocks and securities including $16,000 United States 2½% treasury bonds. Such sales and reinvestments were made in accordance with a policy of the Fiduciary Trust Company of establishing investment diversification for trusts and also to derive more income out of the trust property. Petitioner from time to time received for her approval written recommendations from the trust company with respect to proposed purchases or sales of various securities which she invariably signed and returned to the trust company. The dates and the face amounts of those sales were as follows:

| Date Sold | | Description of Treasury Notes | Face Amount | |
|---|---|---|---|---|
| | | | For Antoinette Kuhlman Trust | For Gilbert Rothschild Trust |
| Feb. | 25, 1941 | U. S. Treasury Notes, ¾% Series A, due 3/15/45 | $43,450 | $43,450 |
| Feb. | 27, 1941 | U. S. Treasury Notes, 1% Series C, due 9/15/44 | 3,000 | 3,000 |
| May | 12, 1941 | " | 5,000 | 5,000 |
| May | 23, 1941 | " | 10,000 | 10,000 |
| June | 2, 1941 | " | 8,000 | 8,000 |
| July | 29, 1941 | " | 11,000 | 11,000 |
| Sept. | 17, 1941 | " | 8,000 | 8,000 |
| Oct. | 15, 1941 | " | 5,000 | 5,000 |
| | | Total | $93,450 | $93,450 |

On April 10, 1941, each of the trusts then having on hand approximately 50 per cent of the above mentioned treasury notes, Van Marx who was then in the employ of Fiduciary Trust Company wrote a letter to Gilbert De Goldschmidt-Rothschild stating that the retention by the trust of approximately 50 per cent of the original securities and cash "is the right thing to do with the bad news on hand and more of it to be expected"; that as the investments then stood each beneficiary had "an approximate annual income of $3,000"; and that Eastman Kodak stock would be repurchased when the price went down.

In asserting the deficiency involved herein the Commissioner determined that at the time the gifts were made, petitioner "was a resident of the United States," and further, "that the property transferred was not bonds, notes or certificates of indebtedness of the United States within the meaning of Section 86.2 of Regulations 108 relating to the gift tax." The Commissioner allowed no part of the specific exemption of $40,000 provided in Section 1004(a) (1) of the Internal Revenue Code.

The sales of the domestic stocks and bonds for the petitioner's custody account and the use of the proceeds therefrom for the purchase of the aggregate $186,900 face amount of United States Treasury notes, during the period from January 14 to 22, 1941, were made with the intention that the petitioner's then contemplated gifts in trust could be made as tax exempt gifts.

The Tax Court in its opinion holding that the gifts in trust were not exempt from gift taxes relied upon Pearson v. McGraw, 308 U.S. 313, 60 S.Ct. 211, 84 L.Ed. 293, and Van Dyke v. Wisconsin Tax Commission, 235 Wis. 128, 292 N.W. 313, which was affirmed by the Supreme Court in a Per Curiam memorandum reported at 311 U.S. 605, 606, 61 S.Ct. 36, 85 L.Ed. 383, upon the authority of Pearson v. McGraw. The opinion of the Tax Court in the case before us made the following observations in support of its conclusion that here, as in the Pearson case, the donor had a prearranged program which subjected her securities to taxation:

"* * * The petitioner never actively managed her financial affairs and relied wholly on the advice of others (in this country on the advice of Van Marx), but she knew of, discussed, and assented to the plan to sell her various income producing domestic stocks and bonds and to purchase low interest rate United States Treasury notes for the purpose of avoiding a gift tax on the transfer in trust she intended to make. Her testimony to the effect that she did not 'discuss with Van Marx the details of any investments that the trustee would make after the trusts were created' or her testimony that she did not 'discuss with anyone either before or after the trusts were created how long these United States Treasury notes would be held by the trustee' is not sufficiently persuasive to throw a different light on the

transaction as it actually took place. The testimony of Van Marx, petitioner's principal advisor as to the creation of the trusts and the several steps involved in the transfers, does not change the picture either. While he remembered most of the details surrounding the gifts in trust and while he testified that he did not before the trusts were created discuss 'how long' the United States Treasury notes would be held by the trustee after the trusts were created, when it came to the question of whether he discussed with petitioner, before the trusts were created, the matter of the trustee's investments after the trusts were created, he testified that 'I suppose I did' and, further, 'I do not remember exactly any more.'

"On this record, we conclude that petitioner's conversion of domestic stocks and bonds into United States Treasury notes under a pre-arranged program or understanding and solely for the purpose of making a tax exempt gift in trust, was ineffectual for gift tax purposes."

We believe it cannot be and indeed is not questioned that a taxable gift would result had the taxpayer planned to have the government notes sold immediately following their incorporation in the trusts, but here she or her advisor Van Marx must have known that it was the policy of the Trust Company to have diversified investments and that this policy would naturally involve sales of the government notes which constituted the sole original investments. Moreover, if the latter investments had been retained there would not have been enough current income to pay the trustee's commissions or to yield any income for the beneficiaries. The substituted investments were and had to be made with the taxpayer's approval and if the Trust Company proved recalcitrant she could remove the trustee and appoint one that would meet her wishes. These considerations when coupled with the fact that half of the government notes were sold within a week of their incorporation in the trust and the remaining half within eight months after the original investments were made and placed in securities that were not tax exempt and were diversified and yielded a better income for the beneficiaries indicate that the orig-

inal investments in government notes only represented temporary expedients adopted with no real thought of investment but merely of tax exemption. While the taxpayer might act so as to decrease her gift taxes to the extent that the law allowed her, action under the statute we are construing had to represent a true investment in tax exempt securities and not simply a temporary transfer which was promptly terminated as soon as the desired object of tax avoidance was thought to be accomplished. Gregory v. Helvering, 293 U.S. 465, 55 S. Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. We hold that the inferences drawn by the Tax Court were justified by the record and decline to modify its justifiable findings of fact.

The taxpayer's contention that the issue decided by the Tax Court was not sufficiently indicated by the Commissioner's deficiency notice and the pleadings is without basis. We are convinced that she was not surprised as to the Commissioner's contentions and suffered no injustice.

The order of the Tax Court is affirmed.