OPINION. Opper, Judge: Respondent determined the deficiencies here involved by restoring to petitioner’s net income the “dealer reserves” withheld by finance companies from trailer paper they bought from petitioner. This determination, -which is supported by Shoemaker-Nash, Inc., 41 B. T. A. 417, the only published opinion of this tribunal dealing with the present question, is resisted by petitioner, an accrual basis taxpayer,[1] on the ground that that case is distinguishable for the reason that dealer reserves in the automobile financing field differ from those in the trailer field. Though the trailer dealer may receive no more than the full face value of this paper while the automobile dealer may receive a profit on its sale, such difference relates only to the amount the dealers may ultimately receive and not to the treatment to be accorded the dealer reserves by accrual basis beneficiaries of these reserves. Although a distinction of this nature was accepted in Keasbey & Mattison Co. v. United States, (C. A. 3) 141 F. 2d 163, the distinction is not supportable logically; and neither the facts in Shoemaker-Nash, Inc., supra, nor the circumstances here support it. Petitioner’s arrangement with Minnehoma, for example, provided for a payment to him in excess of the face value of the notes. But the treatment of the dealer reserves by both petitioner and respondent has been the same whether the dealings with the finance companies resulted in receipt by petitioner of the face value of the note, only, or of a bonus in addition; and we shall do likewise. On the present facts there is thus no basis for a distinction between sales of paper at its face value and sales in which the dealer also receives a bonus. The only reason that the profit or bonus to the dealer on the sale of automobile paper was separately treated in Shoemaker-Nash, Inc., supra, was that respondent in charging the taxpayer there with income not only included the profit on the sale of the car without deduction for any dealer reserve but also included an additional amount which the Board of Tax Appeals assumed to be a profit on the sale of the paper. That merely simplifies the present question with respect to the notes sold for their face value. As to them, in the words of the Shoemaker-Nash opinion: The petitioner being on the accrual basis, we assume that such profit as may-have been realized on the sale of the automobile itself was accrued on petitioner’s books when the sale was made and the subsequent sale of the notes to the finance company was a new and separate transaction. * * * And we do not reach the question posed by the further comment: In any event, there is no suggestion or claim that the amounts withheld by the two finance companies upon the purchase of the notes from the petitioner, the amounts so withheld being the amounts here in controversy, do not represent profit on the disposition of the said notes and do not, in fact, constitute income to the petitioner if, as, and when the said amounts become properly ac-cruable * * * The entire issue, however, was decided on a theory and in language completely dispositive of this case: From the above it is, in our opinion, apparent that the sale of notes of automobile purchasers to the finance companies was as much a part of the business carried on by the petitioner as the sale of the automobiles themselves * * * and, the petitioner being on the accrual basis, we find nothing in this case to justify the conclusion that the profit from the sale of such notes is not accruable when the notes are sold. * * '* For, although the amount of the reserve credit is not immediately paid and does not become immediately payable, there is no showing that it will not be collectible when due or that its collection in the future is improbable. * * * [Emphasis added.] To this we need only add that if because of uncollectible notes some part of the reserve is withheld, petitioner’s compensation for that part will come by way of a specific bad debt charge-off. Petitioner endeavors to justify the dealer reserves as analogous to a reserve for bad debts.[2] But the opposite seems to us more reasonable. Petitioner’s system of bad debt charge-offs in fact demonstrates that the reserves should be included in income. Assume he were correct that the amount of the dealer reserves was not a part of his income either on the theory that their receipt was not sufficiently certain to warrant accrual or that the fair market value of the dealer paper was no greater than the amount actually received by him. If, as an example, the dealer reserve were 10 per cent and petitioner, having received 90 per cent, took only that amount as his current income, bad debts as they arose would be charged against this .10 per cent. There would thus be no reason for him to charge off as a specific bad debt any part of the discounted paper until the bad debts exceeded the 10 per cent which was there to absorb them and had not been included in income in the first place. But the fact is that it was petitioner’s practice to charge off immediately on a specific bad debt approach each item on which a charge was made to the reserves and which was found to be uncollectible. Perhaps another way of stating the same thought is that the dealer reserve constituted a kind of bad debt reserve for petitioner. Such a reserve is inconsistent with the charge-off of individual and specific bad debts. See Rhode Island Hospital Trust Co., 8 B. T. A. 555, reversed on other grounds (C. A. 1) 29 F. 2d 339. Were these reserves to be excluded from petitioner’s net income either as deductions or reductions in his gross income, he would in effect be securing the benefit of the two inconsistent practices. The arguments advanced on behalf of petitioner have been considered and rejected. We axe limited by the authority of the Shoe-máker-Nash case and for that reason, Decision will be entered for the respondent. Petitioner argues at some length that its books of account were not maintained on an accrual basis. But the facts show otherwise, and we have so found. Inventories were an essential part of petitioner’s accounting and for that reason, if for no other, its bookkeeping and reporting would necessarily be based upon an accrual theory. See Herberger v. Commissioner, (C. A. 9) 195 F. 2d 293, 295, certiorari denied 344 U. S. 820. It cannot be too emphatically reiterated that the present Issue Is not whether petitioner Is entitled to establish a reserve for bad debts: or even whether such a reserve might be reasonable if It were based upon the same percentage as the dealer reserves withheld by the finance companies. Petitioner established no such reserve and, In fact, operated on a specific charge-off approach Inconsistent with a reserve method.