OPINION. TURNER, Judge: The petitioner, during the taxable years 1947,1948, and 1949, was a member of a partnership engaged in the sale of used automobiles. This partnership entered into an agreement with the First National Bank of Mobile, wherein the latter agreed to purchase paper acquired by the partnership in the retail sale of used cars on an installment basis. Such paper was required to be satisfactory to the bank in form and content and to provide for the retention of title until full payment thereunder was made, or for a lien to secure such payment. The total indebtedness was to be payable in equal monthly installments. The bank purchased the paper from the partnership at the face amount thereof, less the bank’s discount, the amount required for recording the paper, and the gross premiums on the insurance the bank was to take out, but which would not necessarily be the cost of the insurance to the bank. Of this purchase price, an amount equal to the unpaid balance of the price for which the car was sold, without inclusion of any financing or other charges imposed on the buyer, or the National Automobile Dealers Association’s average loan value, whichever was lower, was credited to the partnership for its unrestricted use, and any balance of the purchase price was credited to a special reserve account for the partnership as collateral security for the performance by the partnership of its obligations under the contract, among others, the obligation to repurchase delinquent paper. In the event of a failure by the partnership to repurchase such paper, the bank was entitled to enforce its rights under the paper against the delinquent debtor or the partnership, or to charge the special reserve account, or any other account maintained by the partnership at the bank, with the amount due under the agreement. During 1947, 1948, and 1949 the bank made credits of $3,837.29, $14,819.88, and $1,691.43, respectively, to the special reserve account pursuant to the above contract purchase arrangement, and in none of the years were any charges made against the account. The record does not show whether or how the said amounts were accounted for on the partnership books, but we do know that they were not taken into account in computing the income reported on the partnership returns. The respondent, in making his determinations herein, has increased income for each of the years by the amount of the credits during the year, and the question is whether he erred in so doing. In support of his claim of error, the petitioner contends, first, that the partnership was on a cash basis of accounting and reporting income and that the amounts in question, credited as they were to the special reserve account, could not represent income to a cash basis taxpayer; and, second, that due to contingencies and uncertainties, they did not constitute income for the said years on an accrual method of accounting. It is our opinion that the claim is not tenable on either ground. The evidence shows that partnership income was computed and reported by the use of inventories. By section 29.41-2 of Regulations 111, a regulation of long standing, it is provided that where inventories are used by a taxpayer in computing its income, no method other than accrual will properly reflect income. Diamond A Cattle Co. v. Commissioner, 233 F. 2d 739, reversing on another point 21 T. C. 1; Caldwell v. Commissioner, 202 F. 2d 112; Herberger v. Commissioner, 195 F. 2d 293; and Harry Hartley, 23 T. C. 353. For a contrary view, the petitioner cites and relies on Glenn v. Kentucky Color & Chemical Co., 168 F. 2d 975. In respect of that argument, see Diamond A Cattle Co. v. Commissioner, supra at 471. It is thus apparent that the respondent was justified in making his determination on the accrual basis, and it is accordingly unnecessary to consider and decide whether the amounts credited to a collateral reserve account, in circumstances such as we have here, would or would not constitute realized income to a cash basis taxpayer. See, however, Luther Bonham, 33 B. T. A. 1100, affd. 89 F. 2d 725. Beginning with Shoemaker-Nash, Inc., 41 B. T. A. 417, decided February 16,1940, this Court has consistently held in cases where the facts in material and controlling respects were substantially the same as those in the instant case that amounts credited to such dealer’s reserve accounts were incóme to the dealer as credited. Blaine Johnson, 25 T. C. 123; Albert M. Brodsky, 27 T. C. 216; Texas Trailercoach, Inc., 27 T. C. 575; and West Pontiac, Inc., 27 T. C. 749. It is true that Blaine Johnson, supra, was reversed by the Court of Appeals for the Fourth Circuit, in Johnson v. Commissioner, 233 F. 2d 952. We have carefully examined and considered the reversal in that case and the basis therefor as stated in the court’s opinion, and feeling that our original position was sound and should therefore be adhered to, we have followed the rule laid down in Shoemaker-Nash, Inc., in each of the cases decided since the said reversal of the Blaine Johnson case, and with full and due respect to the Court of Appeals in the J ohnson case, we do so here. See Arthur L. Lawrence, 27 T. C. 713. In the alternative, the petitioner has alleged, and now contends, that even on an accrual basis the partnership would be entitled to a corresponding reserve for the repurchase or repossession of contracts, which would offset the accruals to the special reserve collateral security account maintained by the bank. Under the statute, losses are deductible in the year sustained and bad debts are deductible in the year the debts become worthless, whether a taxpayer is on a cash basis or an accrual method of accounting. There are situations, however, where, under sound accounting practices, the setting up and maintaining of reserves to cover anticipated losses are permitted; and where such reserves are set up and maintained, the deduction allowable is in the amount of the addition to the reserve which at the end of an accounting period is reasonably required to bring the reserve to the proper level to absorb the losses which on experience and facts existing at the time may, within reason, be expected to occur during the next accounting period. Insofar as appears from the partnership returns themselves and other evidence of record, the partnership during the years herein sustained no losses by reason of the repurchase or repossession of automobile purchase contracts. And assuming that the establishment and maintenance of a reserve would, under sound accounting practices, be permissible for the purposes stated, the record is wholly devoid of any facts which would support any additions to such a reserve for any of the years herein. During 1949 the partnership maintained a 42-foot cabin cruiser, which was used partly for business purposes and partly for personal recreation. The partnership claimed as business expenses $755.65 expended in the operation of the boat and in the entertainment of its passengers, and $236.25 in the purchase of liability insurance on the boat. An expense of this nature, where reasonably related to the operation of the business, may be deducted as an ordinary and necessary expense. The extent to which the expenses in the instant case were related to the operation of the business is, in the main, supported only by the petitioner’s stated conclusions that the expenses claimed were of a business rather than a personal nature. Except for generalities, the criteria upon which the petitioner’s basis for determining whether they were business or personal expenses were not disclosed in his testimony. The record further shows that the boat was used not only by petitioner, but by the other partner, Sherman Barnes, and while it was petitioner’s testimony that Barnes did not use the boat often, and would usually run it aground when he did use it, there is no evidence to show whether Barnes was using the boat for purposes of the partnership business, or for personal reasons. Neither is there any evidence to show whether a part, all, or none of Barnes’s expenses were included in the deduction claimed. The evidence similarly fails to reveal whether the amount claimed for liability insurance was the full amount expended therefor, or only a portion thereof. We are convinced that some of the expenses were sufficiently related to the business to constitute business expenses. But since the evidence is indefinite as to the amount which did properly represent such expenses, we are forced to rely on the rule enunciated in Cohan v. Commissioner, 39 F. 2d 540, and determine as best we can, on the record before us, the amount thereof. Considering the evidence of record and applying the rule laid down in the Cohan case, we are unable to find that more than $250 of the amounts expended for the operation of the boat and the entertainment of its passengers and $60 of the amount expended for liability insurance represented partnership business expense. The deductions are accordingly limited to those amounts. As a part of his determination, the respondent determined that a part of the deficiency for the taxable year 1948 was due to negligence or intentional disregard of rules and regulations, and determined an addition to tax therefor under section 293 (a) of the Code. While the determination of the said addition to tax is, by the pleadings, made an issue herein, we are still not advised with any certainty as to what the negligence or disregard of regulations on which the respondent based his determination consisted of. The respondent’s counsel, in his opening statement, made no mention of the matter whatever and at no place in the record did he give any indication of or state any basis therefor. Similarly, his briefs offer no discussion and contain only the general stated conclusion of the determination. Counsel for the petitioner apparently has proceeded with his presentation of evidence and with his discussion on brief on the theory that the negligence charged under the said section was the omission from the partnership books of $2,900 of the automobile sales made during the months of April, May, and June, 1948. The total sales for 1948 were shown to have been $234,796.29, or an average of $19,566.34 per month. The omission from sales for the 3 months was an average of $966.66%. It was shown that the established practice at the partnership’s place of business was to maintain a separate record card for each automobile purchased and sold and that these cards were periodically taken by an accountant to his office, where he maintained a regular set of books for the business, and while the evidence presented with respect to the qualifications of the accountant and in justification of reliance on him consisted to a substantial degree of generalities and responses to leading questions, we are persuaded, on the record as a whole, that the omission of slightly less than $1,000 for each of the months April, May, and June, 1948, from average sales of almost $20,000 does not alone supply a proper basis for the addition to tax determined, particularly in light of complete failure on the part of the respondent and his counsel to make any representations in rebuttal of petitioner’s evidence and argument as to just what the acts of negligence supplying the basis for the respondent’s determination were. As to the addition to tax for negligence for the year 1948, the petitioner is sustained. Admitting that he never filed a declaration of estimated tax for any of the years herein, it is petitioner’s contention that such failure to file was due to reasonable cause, and not to willful neglect, and that the respondent accordingly erred in his determination of additions to tax under section 294 (d) (1) (A). In establishing reasonable cause, the petitioner’s argument, in substance, is that he relied on one Crowley, the accountant, “who kept the books and prepared the returns”; that on the basis of the information at the time, he was justified in believing that Crowley was competent; that if Crowley said to make declarations of estimated tax, he made them, but if Crowley did not say to make them, the declarations were not made, although he personally did not have any recollection as to whether declarations of estimated tax were or were not made. We are satisfied from the overall record that the petitioner, in his generalized answers, was prompted by his current feeling of resistance to the respondent’s determination, and not to any understanding with or dependency on Crowley or anyone else with respect to the filing of declarations of estimated tax. While there is some indication of record that Crowley did keep a regular set of books of some undisclosed character for the partnership, and may have prepared returns, the record as to petitioner’s books and returns fails to bear out the general assertions and stated conclusions by petitioner in bis own testimony. And in passing, it might be noted that none of the partnership returns shows the signature of Crowley as the preparer thereof. The return of the petitioners for 1947 indicates from a signature thereon that it was prepared by John C. Hanson, not Crowley, although at one point in his testimony the petitioner testified that Hanson was employed after Crowley was dismissed, which was after 1949. From the petitioners’ 1948 return, there is nothing to indicate that it was prepared by anyone other than petitioners themselves. The 1949 return does show that it was prepared by Crowley. We are satisfied, from listening to and observing the petitioner and from an examination of the transcript of his testimony, that the failure to file declarations of estimated tax was the result either of ignorance of the law or indifference, or both, and whether or not he did in fact depend upon Hanson, Crowley, or someone else to make the joint income tax returns which were filed, the failure to file declarations of estimated tax has not been shown to have been due to reasonable cause. The respondent’s determination of additions to tax therefor is sustained. The respondent likewise determined additions to tax, under section 294 (d) (2), for the said years, for substantial underestimation of tax. Failure to file a declaration of estimated tax has been held to be equivalent to an estimate of zero, for the purposes of that provision of the statute. The respondent’s determination of additions to tax for substantial underestimates of tax is also sustained. Harry Hartley, supra; G. E. Fuller, 20 T. C. 308. Decision will be entered under Rule 50.