ANDREW J. and JO ANNE J. DUNCAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Duncan v. Commissioner
Docket No. 31773-84.
United States Tax Court
T.C. Memo 1986-122; 1986 Tax Ct. Memo LEXIS 483; 51 T.C.M. (CCH) 719; T.C.M. (RIA) 86122; March 26, 1986. Andrew J. and Jo Anne J. Duncan, pro se. John Weeda, for the respondent. PETERSON
MEMORANDUM FINDINGS OF FACT AND OPINION PETERSON, Special Trial Judge: This case was assigned pursuant to the provisions of section 7456(d) [1] and Rules 180, 181 and 182. [2]
In his statutory notice of deficiency dated June 7, 1984, respondent determined a deficiency in petitioners' 1981 Federal income tax in the amount of $2,238.87, an addition to tax under section 6653(a)(1) of $111.94 and an addition to tax under section 6653(a)(2) in an amount equal to 50 percent of the interest *484 due on a deficiency of $2,238.87. [3] The issues for decision in this case are (1) whether petitioner Andrew J. Duncan's stock in Jamaica Pre-Mix, Ltd. became totally worthless during 1981; (2) whether petitioners are entitled to partnership losses in excess of the amount allowed by respondent with respect to the Paragon 80-2, Ltd. partnership; and (3) whether petitioners are liable for additions to tax under sections 6653(a)(1) and (2). Petitioners Andrew J. Duncan (hereinafter referred to as petitioner) and Jo Anne J. Duncan, husband and wife, resided within the state of Florida at the time their petition was filed. Petitioners timely filed their 1981 joint Federal income tax return. On April 19, 1982, petitioners filed an amended return *485 and claimed a long-term capital loss in the amount of $42,500 with respect to an investment in stock of Jamaica Pre-Mix, Ltd. A second amended return was filed by petitioners in which they claimed partnership losses in the amount of $14,314. [4] In the statutory notice of deficiency respondent disallowed the long term capital loss on the grounds that there had been no disposition of petitioner's stock nor had it become worthless during the 1981 tax year. With regard to the partnership losses, respondent disallowed $2,270 on the ground that the claimed loss exceeded petitioner's adjusted basis in the Paragon 80-2, Ltd. partnership by such an amount. Certain facts have been stipulated by the parties and are incorporated herein by this reference. Jamaica Pre-Mix, Ltd.
Jamaica Pre-Mix, Ltd. (JPM) is a closely held family-run company formed under Jamaican law in 1958. During the year in issue approximately 75 percent of JPM's *486 stock was held by Ledgehill International, a company owned 100 percent by petitioner's father; petitioner owned approximately 11 percent of JPM; and the remaining 14 percent was held by an unrelated investor. Since its formation JPM has been engaged in the production of pre-mixed concrete, sand and gravel for sale to the local Jamaican construction industry. JPM has operated continuously since 1958 and was still in operation at the time of trial in this case. Petitioner was employed as the managing director of JPM from the time of its formation through 1969. It appears that JPM was, for the most part, profitable during this time span. In 1969 petitioners left Jamaican due to political unrest and increasing violence. Since that time petitioner's brother has acted as managing director of JPM. Due largely to the same conditions which precipitated petitioners' departure from Jamaica, the Jamaican economy (including its construction industry) suffered a marked decline during the 1970's. During this period JPM sustained a series of losses due to a substantial decrease in its sales. Petitioner contends that such losses, considered in conjunction with a number of other factors, prove *487 that his JPM stock was worthless and that he is entitled to claim a loss therefor in 1981. Respondent contends that petitioner has failed to prove that his stock became worthless in 1981 and is thus not entitled to a deductible loss under section 165(g). [5]
A loss from worthless stock is treated under section 165(g) as a loss from the sale or exchange of the security on the last day of the taxable year in which worthlessness occurs. Section 1.165-1(d)(1), Income Tax Regs. provides in *488 part that "a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year." The burden is on the taxpayer to establish the worthlessness of the stock and the year in which it became worthless. Boehm v. Commissioner,326 U.S. 287, 292 (1945). Stock becomes worthless and the loss is sustained only when the stock has no liquidating value and there is no reasonable hope and expectation that at some future point in time it will become valuable. The loss of potential value can be established satisfactorily only by some "identifiable event" in the corporation's life which extinguishes all hope and expectation of revitalization, such as bankruptcy, cessation of business operations, liquidation of the corporation or appointment of a receiver for it. See Morton v. Commission,38 B.T.A. 1270, 1278 (1938), affd. 112 F.2d 320 (7th Cir. 1940). Loss of potential value can also be inferred, in exceptional circumstances, *489 where a corporation's liabilities so greatly exceed its assets and "the nature of its assets and business is such that there is no reasonable hope and expectation that a continuation of business will result in any profit to its stockholders." 38 B.T.A. at 1279. In such cases the stock clearly has no liquidating value and its worthlessness is established. The occurrence in a later year of an "identifiable" event, such as bankruptcy or liquidation, therefore, does not then determine the worthlessness of the stock in such circumstances. Petitioner does not contend that any "identifiable event" occurred during 1981 which would mark it as the year his JPM stock became worthless, and the record in this case reveals no such event. Petitioner, instead, points to a number of factors which cumulatively caused him in 1981 to give up hope that his stock had any value, including JPM's string of losses, the failure of the company to pay any dividends since its formation, his inability to sell his stock despite repeated attempts since 1969, the fact that he held a minority interest in JPM, as well as myriad economic and political problems. "I just concluded," petitioner testified, *490 "that if it took seven years to declare a person dead, after 23 years I would declare my stock dead." The only evidence in the record regarding JPM's liquidation value consists of audited financial statements for the year ended December 31, 1980, which reflect assets of $2J,862,543, [6] liabilities in the amount of $1J,640,207 and a resulting net worth of $1J,222,336. Petitioner claims that such figures are grossly inaccurate and that after making certain adjustments JPM's net worth as of December 31, 1980, would be more accurately estimated at ($308J,037). Based upon this record we find that petitioner has failed to prove his stock became worthless during the year in issue. Petitioner has presented no evidence regarding the net worth of JPM in 1981, other than his unsubstantiated testimony that it further declined in that year. Even if we accept petitioner's assertions regarding JPM's net worth for 1980 and 1981, we are still unable to find that petitioner's stock lacked potential value in such years since it is clear from the record that JPM has never ceased operations. Petitioner testified that JPM has maintained enough viability *491 to provide his brother with his primary source of livelihood during the year in issue and beyond. It appears that JPM remains in a position to profit, and thus its shareholders would benefit from improvement in the Jamaican economic and political situation. Petitioners have failed to prove, therefore, that JPM had no potential value in 1981. Morton v. Commissioner,supra at 1278. Moreover, there is no evidence which would point to 1981 as a year in which future prospects for JPM became any more or less dismal than they had appeared to be in 1978, 1979 or 1980. The fact that petitioners gave up hope in 1981 is not determinative since the test for worthlessness of corporate stock is objective rather than subjective. Boehm v. Commissioner,supra at 290. Accordingly, respondent is sustained on this issue. Partnership Losses.
Petitioners have presented no evidence or argument regarding the Paragon 80-2, Ltd. partnership losses. Respondent's determination as set *492 forth in the notice of deficiency is presumed to be correct, with petitioners bearing the burden of proof. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). Since petitioners have clearly not met their burden of proof, we hold for respondent on this issue. Additions to Tax.
The remaining issue concerns respondent's determination that petitioners are liable for additions to tax under section 6653(a)(1) for "negligence or intentional disregard of rules or regulations" and under section 6653(a)(2) in an amount equal to 50 percent of the interest payable with respect to that part of the underpayment resulting from such negligence or intentional disregard of rules or regulations. The statutory notice of deficiency is unclear as to whether these additions were determined with respect to the worthless stock loss or the claimed partnership losses, but respondent argues on brief only with respect to the worthless stock issue. Once again, the burden of proof is on petitioners. Enoch v. Commissioner,57 T.C. 781 (1972). On this record, we find that petitioners have met their burden of proof and that no additions to tax under section 6653(a) *493 should be imposed. The primary adjustment to petitioners' 1981 income was the disallowance of a loss for worthless stock. The questions of worthlessness and the timing of such deductions have been litigated numerous times in years past, with each case ultimately turning on its own peculiar facts and circumstances. See, e.g., Scifo v. Commissioner,68 T.C. 714 (1977). Respondent makes much of the fact that petitioners attempted to claim a deduction for partial worthlessness of their JPM stock in 1978 and that they failed to seek tax advice prior to deducting it on their 1981 amended tax return. In Young v. Commissioner,123 F.2d 597 (2d Cir. 1941), affg. a Meorandum Opinion of this Court, the court said at page 600: the taxpayer is at times in a very difficult position in determining in what year to claim a loss. The only safe practice, we think, is to claim a loss for the earliest year when it may possibly be allowed and to renew the claim in subsequent years if there is any reasonable chance of its being applicable to the income for those years. *494 In cases where difficult questions of law or fact are decided against taxpayers who in good faith took erroneous positions, we have previously held the addition to tax for negligence inapplicable. Dillin v. Commissioner,56 T.C. 228, 248 (1971); Pederson v. Commissioner,14 B.T.A. 1089, 1120 (1929). Based on this record we find that petitioners claimed the stock loss based upon their good faith interpretation of the facts as they knew them. Petitioners' inability to carry their burden of proof regarding the worthlessness of the stock does not, in this case, indicate that they were negligent in claiming the loss. Petitioners did not contest respondent's other adjustments regarding partnership losses for the year 1981. These adjustments were minor, however, in comparison to the claimed stock loss, and were fully disclosed when first claimed in petitioners' second amended return. Such relatively minor adjustments do not rise to the level of what is considered to be negligence under section 6653(a). Compare Kilborn v. Commissioner,29 T.C. 102, 111-112 (1957). [7] We, therefore, hold for petitioner with respect to the additions *495 to tax under sections 6653(a)(1) and (2). Decision will be entered under Rule 155.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. We granted respondent's motion at trial to increase the income tax deficiency and the additions to tax in this case based solely upon mathematical errors in the statutory notice of deficiency. The income tax deficiency at issue, therefore, is $5,360.01, and the amounts of the additions to tax at issue under sections 6653(a)(1) and (2)↩ are increased accordingly. Petitioners did not contest respondent's motion for increased deficiency.
4. Petitioners' second amended return actually reflected a loss of $13,072 which resulted from the netting by petitioners of certain separately stated items on the partnership return totaling $14,314 against items overstated on their original return.↩
5. Section 165(g) provides, in pertinent part: (g) Worthless Securities.-- (1) General Rule.--If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset. (2) Security Defined.--For purposes of this subsection, the term "security" means-- (A) a share of stock in a corporation; * * *↩
6. Jamaican dollars are designated "J$ ."↩
7. See also King v. Commissioner,T.C. Memo. 1983-148↩, where the taxpayer did not dispute certain relatively minor adjustments to income made by respondent in the notice of deficiency, and the Court declined to apply the negligence penalty based upon such adjustments.