MAURICE D. AND MAUREEN SHELTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; BERNICE H. AND CAROL ANN FITE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shelton v. Commissioner
Docket Nos. 15983-86; 16083-86.
United States Tax Court
T.C. Memo 1988-351; 1988 Tax Ct. Memo LEXIS 372; 55 T.C.M. (CCH) 1475; T.C.M. (RIA) 88351; August 4, 1988. James Allen Brown, for the petitioners. Stephen C. Coen, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: These cases were assigned to Special Trial Judge Lee M. Galloway pursuant to the provisions of section 7456(d) (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755), and Rules 180, 181, and 183 of the Tax Court Rules of Practice and Procedure.[1] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GALLOWAY, Special Trial Judge: Respondent determined deficiencies and additions to tax in petitioners' Federal income taxes as follows: Maurice D. Shelton and Maureen Shelton
Docket No. 15983-86
Additions To Tax, Sections
Year
Deficiency
6653(a)(1) [2]
6653(a)(2)
6659
1979
$   546
$  27.30
-0-
-0-  1980
2,334
116.70
-0-
$   700.20
1981
1,165
58.25
** 349.50
1982
5,336
266.80
** 1,600.00
1983
2,819
140.95
** 845.70
*374 Bernice H. Fite and Carol Ann Fite
Docket No. 16083-86
Additions To Tax, Sections
Year
Deficiency
6653(a)(1)
6653(a)(2)
6659
1980
$  4,753
$ 237.65
-0-
$ 1,425.90
1981
4,999
249.95
** 1,499.70
1982
5,822
291.10
** 1,746.60
1982
11,124
556.20
** 3,337.00
Respondent also determined that the petitioners were liable for additional interest for all taxable years under the provisions of section 6621(d). [3]
The issues for decision are: (1) whether petitioners are entitled to a loss *375 deduction under section 165; and (2) whether petitioners are liable for additions to tax determined under the provisions of section 6653(a) and section 6659. Petitioners Maurice D. Shelton and Maureen Shelton were residents of Little Rock, Arkansas, and petitioners Bernice H. Fite and Carol Ann Fite were residents of Bryant, Arkansas at the time their respective petitions were filed with the Court. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact and exhibits attached thereto are incorporated herein by this reference. Petitioners have conceded [4] by stipulation that they are liable for all deficiencies in tax and additional interest calculated pursuant to section 6621(c). The parties agree that petitioners invested in a master videotape recording program similar to that described in our opinion in Chester v. Commissioner,T.C. Memo. 1986-355. The following schedules list the deductions, credits, and losses taken by each petitioner in connection with their *376 investment in a master video recording program known as I Peter 1:25 (First Peter): [5]
TOTAL
INVESTMENT
YEAR
INCOME
DEPRECIATION
INTEREST
DEDUCTIONS
TAX CREDIT
LOSSES
Maurice D. and Maureen Shelton -- docket No. 15983-86 1979
--
--
--
--
$   5476
--
1980
--
--
--
--
2,334
--
1981
--
--
--
--
1,165
--
1982
$  2,661
$ 10,500
$   967
$ 11,467
2,955
$  8,806
1983
8,792
15,400
5,781
21,181
--
12,389
Total
$ 11,453
$ 25,900
$ 6,748
$ 32,648
$ 7,000
$ 21,195
Bernice H. and Carol Ann Fite -- docket No. 16083-86
1980
--
--
--
--
$ 4,753
--
1981
--
--
--
--
4,999
--
1982
--
--
--
--
5,822
--
1983
--
$ 26,363
--
$ 26,363
$ 2,926
$ 26,363
Total
$ 26,363
$ 26,363
$ 18,500
$ 26,363
*377 Petitioner Maurice D. Shelton (Shelton) is an aviation electronics technician employed by Falcon Jet Corporation (Falcon Jet) at a local airfield. Mrs. Shelton is a registered nurse. Petitioner Bernice H. Fite (Fite) is an agent for Farmers Insurance Group. His wife is a registered nurse. Fite has a bachelor's degree from Columbia College, Missouri. Shelton invested $ 70,000 in First Peter by paying $ 100 cash on November 2, 1982, $ 6,900 on May 21, 1983 and executing a $ 63,000 recourse 10-year note for the balance due. The $ 6,900 was invested after Shelton received a refund from carrying back the claimed excess 1982 investment tax credit to 1979, 1980 and 1981. Fite invested $ 100,000 in First Peter by payment of $ 200 cash in December 1983 and $ 18,300 in October 1984 plus a recourse promissory note for the balance due. Fite made the 1984 payment after receiving a refund of income taxes claimed as overpaid on his 1983 tax return and refunds of 1980, 1981 and 1982 income taxes resulting from carrying back the claimed excess 1983 investment tax credit to those years. Shelton and Fite became aware of the First Peter videotape investment program through acquaintances, *378 some of whom were co-workers and investors in First Peter. The acquaintances introduced Shelton and Fite to promoters of the videotape recording program. Each petitioner was furnished a prospectus and a legal opinion of a local attorney dated July 15, 1982. The attorney's legal opinion was made "FOR THE EXCLUSIVE USE" of the sellers of several videotape recording investment programs, including First Peter and the DanKryst program described in the Chester case. The writer of the legal opinion represented that he had "researched" section 38 (Investment Tax Credit) regarding its relation to production of videotapes and had investigated and inspected the operations of the investment companies. However, the attorney gave no opinion as the allowability of investment tax credits on tapes purchased by investors. He merely cautioned "any prudent investor" to seek and obtain "independent advice from their accountant or legal consultant relative to the investment tax credit." Neither Shelton nor Fite were familiar with the tape recording industry, nor were they experienced in accounting or income tax matters. After reviewing the legal opinion, neither petitioner sought independent *379 accounting or legal advice concerning the viability of the First Peter investment program. Prior to investing in the First Peter recording program, Shelton read financial newsletters and magazines and attended a two-week general investment seminar offered by a local night school. The subject matter in the seminar did not include investment in master recording videotapes. Shelton relied almost exclusively on investor/co-workers at Falcon Jet and promoters for information concerning First Peter. Some co-workers had consulted C.P.A.s or tax advisors and had been advised that the investment program "was perfectly legal," and that several investors had their returns audited with no changes resulting. Prior to investing in the videotape programs, Fite secured information about First Peter from acquaintances and promoters of the program. He talked to other investors who had visited the business premises at Cabot. Fite called the local Internal Revenue Service office, inquired about the investment program, mailed an investment brochure (but not the prospectus) to the Internal Revenue Service and was advised "they didn't know of any problem with it." The 1983 tax returns of both *380 Shelton and Fite were prepared by a local C.P.A. who had been referred to the petitioners by the promoters as an accountant familiar with the First Peter investment program and preparer of other First Peter investors' returns. Fite talked with the C.P.A. about the investment program and was advised there was nothing wrong with it. Petitioners never viewed or took possession of their tapes, or purchased insurance for them. OPINION Section 165 Loss Deduction
Petitioners have conceded by stipulation "all deficiencies in tax" based on our Chester decision, supra. The parties agree that the First Peter program, in which Shelton invested $ 7,000 and Fite invested $ 18,500, is similar to the videotape program described in Chester. Nevertheless, petitioners now claim losses of the above amounts invested, either as a loss incurred in a transaction entered into for profit 165(c)(2), or, in the alternative, as a theft loss under section 165(c)(3). In our recent case of Wicker v. Commissioner,T.C. Memo. 1988-225, [6] the taxpayer presented a similar argument. There, the taxpayer argued that the two videotapes he had purchased for $ 18,000 were worthless; *381 and that he was therefore entitled to a deduction of $ 17,900 under section 165, based on our decision in Chester v. Commissioner, supra. However, as pointed out in Wicker v. Commissioner, supra, the Chester case held that the tapes had some value. Chester v. Commissioner, supra at n.23. Petitioners have the burden of establishing that they actually sustained losses in transactions entered into for profit during the taxable years in issue. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). They have failed to do so. This record discloses that petitioners still own the tapes. Petitioners' argument that they are entitled to a theft loss under section 165(c)(3) is even less persuasive. Petitioners now argue that "the entire record does show that misrepresentations had been made as to the clearance by the Internal Revenue service of the investment *382 program." We do not agree. There is absolutely no documentary evidence or testimony by petitioners or others that petitioners were misled by promoters, accountants, or attorneys into believing that the deductions or credits in issue had been approved by the Commissioner. To sustain a theft loss deduction with respect to amounts paid in connection with a scheme to avoid taxation, a taxpayer must demonstrate that he entered into the transaction only after having been deceived as to its nature. West v. Commissioner,88 T.C. 152, 163 (1987); Nichols v. Commissioner,43 T.C. 842, 887 (1965). Petitioners have again failed to carry their burden of proof. Welch v. Helvering, supra.
Section 6653(a) Addition To Tax
Petitioners bear the burden of proving that additions to tax determined under section 6653(a) do not apply. Luman v. Commissioner,79 T.C. 846, 860-861 (1982); Bixby v. Commissioner,58 T.C. 757, 791 (1972); Rule 142(a). Petitioners first argue that the negligence additions to tax are not applicable since respondent did not specify in the notice of deficiency "the petitioner's acts of *383 negligence upon which he is basing his determination." The case of Kilborn v. Commissioner,29 T.C. 102, 111-112 (1957), heavily relied on by petitioners, does not support this contention. Kilborn v. Commissioner, supra, involved an addition to tax based on income adjustments to a special reserve account of an auto sales partnership. The Court held for petitioners because it had no clue in the record of the reason for the negligence determination. The only evidence and argument on the issue, at trial and on brief, was presented by the taxpayers. Petitioners' argument that they took "reasonable steps" to investigate the First Peter program must likewise be rejected. Petitioners were advised in a legal opinion to seek independent advice concerning the tax consequences of investing in the First Peter program. They failed to do so. We find on this record a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Marcello v. Commissioner,380 F.2d 499, 506 (5th Cir. 1967), affg. a Memorandum Opinion of this Court. See also Wicker v. Commissioner, supra; *384 Bilyeu v. Commissioner,T.C. Memo. 1988-209. Respondent is sustained on this issue. [7]
Section 6659 Addition To Tax
Section 6659 applies to returns filed after December 31, 1981. Section 722(a)(4), Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 34l. [8] Section 6659(a) provides that where there is an underpayment of tax attributable to a valuation overstatement, there should be an addition to the tax in an amount equal to the applicable percentage of the underpayment so attributable. Where the valuation claimed is more than 250 percent of the correct valuation, the applicable percentage is 30 percent. Sec. 6659(b). Section 6659(c) states that there is a valuation overstatement if the value of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount *385 determined to be the correct amount of such valuation or adjusted basis. Here, too, respondent's determination is presumptively correct. Rule 142(a). Petitioners introduced no evidence to support any value of the tapes and have not contested the valuation determinations supporting their respective notices of deficiency. We cannot accept petitioners' contention that they are excused from furnishing evidence of the value of the tapes "because this point has been settled and stipulated to."  Petitioners have failed to prove that respondent erred in determining additions to tax under this section for each of the years at issue. Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided. ↩
2. Former sec. 66539(a), as amended, became sec. 6653(a)(1), effective for those taxes for which payment is due after December 31, 1981. Secs. 722(b)(1) and (2), Economic Recovery Tax Act of 1981, 95 Stat. 342. 50 percent of the interest due on the underpayment determined for the year in issue.
**↩ 50 percent of the interest due on the underpayment determined for the year in issue. 3. Subsec. (d) of sec. 6621 was redesignated subsec. (c) and amended by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1511(c) (1) (A)-(C), 100 Stat. 2744. Hereinafter, we use the reference as amended. ↩
4. Respondent has conceded that petitioners are entitled to an additional sales tax deduction based on a Pulaski County local option sales tax. ↩
5. First Peter was one of the videotape programs examined by Charles Schnebelen, an examining agent in the Internal Revenue Service Exempt Organization Branch, in connection with Chester v. Commissioner,T.C. Memo. 1986-355, 52 T.C.M. 78↩, 84, 55 P-H Memo T.C. par. 86,355. Agent Schnebelen, called as a witness in the cases before us, described the program production studio and the video recording equipment located in Cabot, Arkansas, 30 miles north of Little Rock. 6. As in the case before us, this Court in Wicker v. Cimmissioner, T.C. 1988-225, observed that the master videotape program in which the taxpayer invested was "the same * * * as the program described in Chester v. Cimmissioner,T.C. Memo. 1986-355↩." 7. In this regard, there is simply no independent evidence supporting Fite's argument that the C.P.A. who reviewed the First Peter promotional material, "was aware of what was going on" and "being a C.P.A. * * * wouldn't let someone prepare something that as wrong."  Neither petitioner called the C.P.A. as a witness at the trial. ↩
8. In Nielsen v. Commissioner,87 T.C. 779, 782-783↩ (1986), we held that section 6659 applies to underpayments of tax for years filed before the effective filing date which are attributable to valuation statements on returns filed after the effective date.