ALBERT M. BRODSKY AND LUCILLE BRODSKY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56692.    Filed October 31, 1956.

*S. A. Sorenson, Esq.*, for the petitioners.
*John D. Picco, Esq.*, for the respondent.

OPINION.

LEMIRE, *Judge:*  This proceeding involves deficiencies in income tax for the taxable years 1949 and 1950 in the amounts of $530.36 and $1,940.56, respectively.

The sole contested issue is whether the respondent erred in including in petitioners' income for the years 1949 and 1950 certain amounts withheld by a bank out of sums due on the purchase of notes from petitioners, automobile dealers on an accrual basis, which were held as a dealer's reserve and credited on the bank's books to petitioners, pursuant to a written agreement.

All the facts have been stipulated and are found accordingly. They may be summarized as follows:

Petitioners are husband and wife residing in Eugene, Oregon. They filed joint income tax returns for the years 1949 and 1950 with the then collector of internal revenue for the district of Oregon.

During and prior to the taxable years involved petitioners were equal partners in the partnership doing business under the name of Brodsky's Willys Company, which engaged in buying, selling, and servicing new and used automobiles.

The partnership kept its books and filed its partnership returns on an accrual method of accounting. It used the specific charge-off method in deducting its bad debts.

A large number of automobiles sold by petitioners were sold pursuant to conditional sales contracts under which the purchaser agreed to pay the unpaid purchase price, including insurance, interest, finance, and other charges, over a specified period of time. Usually the purchaser executed a note for the unpaid balance. Under the conditional sales contract, which was assignable, title remained in petitioners until the amount due was paid in full.

During the taxable years involved there was in force an agreement between petitioners and the First National Bank of Eugene, Oregon, pursuant to which petitioners sold and assigned the notes and conditional sales contracts to the bank. Under the agreement the bank remitted to the partnership the amount due on the selling price of the automobile less the amount which was credited to a dealer's reserve account referred to as a "loss reserve" in the agreement and called the "Bancontrol Account" on the books of the bank. The bank annually remitted to petitioners a certain portion of the reserve, retaining 10 per cent of the unpaid balance on the notes, or $1,000, whichever was greater.

The provisions of the agreement between petitioners and the bank, pertinent to the issue involved, read as follows:

(1) The Bank will purchase from Dealer, at such rate of discount as Bank shall from time to time establish, such contracts of conditional sale of and chattel mortgages on new and used automobiles (which contracts of conditional sale and chattel mortgages are herein called "contracts") as Bank shall deem acceptable. All contracts, assignments and guaranties shall be executed upon forms provided or approved by Bank.

\*          \*          \*          \*          \*          \*          \*

(3) With respect to each contract assigned by Dealer to Bank, Dealer warrants that title to the property therein described is vested in the Seller or Mortgagor, free from encumbrances other than the contract, that the contract arose from a bona fide sale of the property therein described, that the Dealer is the owner of the contract and has good right to assign the same, that the Purchaser or Mortgagor has capacity to execute the same and is bound thereby, that no payment has been made to apply upon the indebtedness thereby evidenced, that there is no defense, offset or counterclaim thereto, that the property has been delivered to and accepted by the Purchaser or Mortgagor and approved by him. Subject to the provisions of paragraph 6 hereof. Dealer guarantees full and prompt performance of each and every of the terms, covenants and conditions to be performed by the Purchaser or Mortgagor contained in each contract assigned by Dealer to Bank. Consent is hereby granted to extensions, indulgences, waivers, settlements, compromises, adjustments and all such other acts as Bank shall deem advisable with respect to any contract assigned to it by Dealer, without notice and without affecting recourse hereunder. Dealer also waives presentment, protest, notices of nonpayment and notice of any other kind. If Bank shall exercise or attempt to exercise any remedy and a balance shall remain owing hereafter, Dealer agrees to pay the same upon demand. If any suit or action be brought upon this agreement or for the branch [*sic*] hereof, Dealer agrees to pay such attorney's fees as shall be adjudged reasonable therein.

(4) The Bank shall create a loss reserve to the credit of which it shall deposit the difference between its discount rate and the contract carrying charge and from which it shall remit to the Dealer on <u>Annually</u> for that portion of the reserve in excess of <u>10%</u> of the Dealer's contingent liability to Bank, its successors or assigns, except that such remittances shall not reduce the reserve below the sum of <u>$1000.00,</u> nor shall any remittance be made while Dealer shall be in default in the performance of any obligation to Bank, its successors or assigns, nor after the termination of this agreement by either party or if the Bank deems the Dealer to be insolvent or if Dealer is no longer engaged in the automobile business, until all of Dealer's obligations to Bank, its successors or assigns, whenever arising and however evidenced, whether absolute or contingent, primary or secondary, due or deferred, shall have been discharged in full. All such obligations are secured by said reserve.

(5) When any obligation of the Dealer upon a guaranty of a contract shall become absolute, such liability shall be limited to the unpaid balance less unearned discount and less insurance premium refund, if any, received by Bank and such amount shall be paid by the Dealer upon demand, without recourse to the Dealer's reserve.

(6) The Bank shall protect the Dealer from loss by waiving recourse upon Dealer's guaranty when Bank is unable to deliver the automobile described in the contract to the Dealer within 90 days after the maturing of the oldest unpaid full installment; except that in the event of the Bank sustaining a loss, if it shall appear

(a) That, upon a new car contract, the original cash balance (difference between cash selling price and down payment) was in excess of 70% of the cash selling price or

(b) That, upon a used car contract, the original cash balance (as above defined) was in excess of 66⅔% of the lesser of the cash selling price of the average retail price as quoted in the issue of the valuation book current as

of the date of the sale, then in general use by the Bank, then, in either such case,

Dealer shall pay to Bank upon demand, without recourse to Dealer's reserve, that proportion of the excess which the unpaid balance on the contract at the time of loss bears to the original amount of the contract.

When the Bank shall sustain a loss on a contract the loss reserve on that contract shall not be earned, but, instead, the amount thereof shall be repaid by Dealer to Bank upon demand.

(7) The Bank's agreement to protect the Dealer from loss by a release of his guaranty upon the terms and in the manner herein specified shall not apply in any of the following cases: * * *

The nine specifications set forth, under which the bank's agreement to protect the dealer does not apply, are not deemed material hereto.

The partnership accounted for the dealer's finance reserve by setting up an asset account labeled "Reserve Withheld on Contracts" and a liability account labeled "Repossession Fund." When the bank made a credit to the partnership in its Bancontrol account the partners debited the asset account in the amount of the bank's credit and credited its liability account an equal amount to show a contingent liability.

The amounts credited by the bank to the dealer's finance reserve account of the petitioners for the period ending December 31, 1950, and the annual excess of the reserve credit in each of said years over the 10 per cent contingent requirements provided in the agreement, were as follows:

| Calendar year | Credits to dealer's finance reserve | Excess of 10 per cent of contingent liabilities |
|---|---|---|
| 1946 | $176.00 | (1) |
| 1947 | 2,177.30 | (1) |
| 1948 | 4,733.81 | $585.95 |
| 1949 | 6,039.96 | 4,780.36 |
| 1950 | 8,305.34 | 3,543.79 |

1 None.

Prior to the filing of amended partnership returns for 1948 and 1949 petitioners reported no income from the dealer's finance reserve. On February 14, 1951, petitioners filed amended returns for 1948 and 1949, in which they reported the annual excess of the reserve credits over the 10 per cent contingent requirements. Thereafter, for 1950 and subsequent years petitioners included the annual excess of the reserve credits for the year over the 10 per cent contingent requirements of the agreement as income in the partnership and individual returns filed by them.

The two accounts on the partnership books kept by the petitioners had year-end balances as follows:

| Year ended December 31 | Reserve withheld on contracts account | Balance of account before filing amended returns | Balance of account after filing amended returns |
|---|---|---|---|
| 1946 | $176.00 | $176.00 | $176.00 |
| 1947 | 2,353.30 | 2,353.30 | 2,353.30 |
| 1948 | 7,087.11 | 7,087.11 | 6,501.14 |
| 1949 | 13,127.07 | 13,127.07 | 7,760.74 |
| 1950 | 21,432.41 | 21,432.41 | 11,304.53 |

The total credits to the partnership in the Bancontrol account of the bank for 1949 and 1950 were $6,039.96 and $8,305.34, respectively. In each of the years petitioners reflected the bank's credit on the books of the partnership by debiting its asset account "Reserve Withheld on Contracts" and by crediting the contingent liability account "Repossession Fund" in like amounts. Petitioners then included in partnership income the amounts of $4,780.36 and $4,761.55 for 1949 and 1950, respectively. The amounts reported in income represented the annual excess of the reserve credits over the 10 per cent contingent requirements set forth in the agreement. The amounts credited to income were offset by debits to the liability account "Repossession Fund." Petitioners did not include in income for 1949 and 1950 the respective amounts of $1,259.60 and $3,543.79 nor were these amounts carried through or reflected in the profit or loss accounts on the partnership books kept by the petitioners.

In determining the deficiencies the respondent increased petitioners' income for the taxable years 1949 and 1950 by the amounts of $1,259.60 and $3,543.79, respectively.

At all times material herein the bank was financially sound and able to pay any amount which became payable to petitioners.

The respondent contends that the facts in the instant case bring it squarely within our decisions in *Shoemaker-Nash, Inc.*, 41 B. T. A. 417, and *Blaine Johnson*, 25 T. C. 123, wherein it was held that an automobile dealer on an accrual method of accounting is taxable on the entire amount of the selling price of notes sold to a finance institution.

The petitioners rely upon the contrary view expressed by the Court of Appeals for the Fourth Circuit at 233 F. 2d 952 in reversing the *Johnson* case, *supra*.

The *Shoemaker-Nash* case, *supra*, since 1940 has been repeatedly followed by this Court in a number of Memorandum Opinions and, in our opinion, correctly states the law applicable to the facts here presented. With due deference to the contrary conclusion reached by the Court of Appeals in the *Johnson* case, *supra*, we prefer to adhere to our decisions.

We therefore hold that the dealer's reserve withheld during the taxable years 1949 and 1950, here in controversy, constituted income to petitioners in such years.

*Decision will be entered for the respondent.*