ARTHUR V. MORGAN AND DOROTHY O. MORGAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56621. Filed October 17, 1957.

*Leonard B. Hankins, Esq.*, for the petitioners.
*Joseph G. White, Jr., Esq.*, for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in income tax for the calendar year 1950 in the amount of $4,076.40. The petitioner Dorothy O. Morgan is a party only by reason of having signed the joint income tax return for the year 1950.

The respondent made several adjustments to the reported income in determining the deficiency. The only issue is whether an automobile dealer partnership, of which the petitioner Arthur V. Morgan was a member, realized income through credits to a reserve account on the books of a bank to which the partnership assigned conditional sales contracts.

### FINDINGS OF FACT.

Some of the facts were stipulated and as so stipulated are incorporated herein by this reference.

The petitioners are husband and wife, residing at Long Beach, California. Their joint income tax return for the calendar year 1950 was filed with the collector of internal revenue for the sixth district of California. The petitioner Arthur V. Morgan will hereinafter be referred to as the petitioner.

The petitioner and Frank D. Lortscher formed a partnership doing business as Art Morgan Motor Company (hereinafter referred to as the partnership) in Long Beach, California, on January 7, 1950. The petitioner held a 75 per cent interest and Lortscher held a 25 per cent interest. The partnership kept its books and returned its income on an accrual method of accounting. It filed an income tax return for the taxable period January 7, 1950, to December 31, 1950, with the collector of internal revenue for the sixth district of California.

The partnership was actively engaged in the purchase and retail sale of used automobiles. A large number of automobiles were sold under conditional sales contracts. In all such sales the conditional sales contracts were simultaneously assigned by the partnership to Farmers & Merchants Bank, Long Beach, California, hereinafter referred to as the bank.

The forms used in the making of conditional sales were furnished by the bank to the partnership. In all conditional sales contracts purchasers agreed to pay the amount designated therein as the "Contract balance," which is made up of the several items set forth in the example given below. The purchaser agreed to pay the amount of the contract balance in equal successive monthly installments at an office of the bank. The contracts provided that title to the car should remain in the dealer until all payments were made and all conditions of the contract were complied with. Two forms of assignment were

used by the partnership in assigning the contracts to the bank. Under one form the assignment was made "with recourse" and the other was made "without recourse."

From January 7, 1950, to July 1, 1950, the partnership assigned contracts to the bank under the form which bore the caption "With Recourse" and from July 1950 until the end of the year it assigned contracts under the form designated "Without Recourse." Both forms of assignment during the year 1950 were made subject to an additional agreement between the partnership and the bank which contained the following provisions:

4. Evidence of registration showing the Bank as legal owner must accompany all contracts submitted for purchase.

\* \* \* \* \* \* \*

6. Notwithstanding the fact that the said contracts have been and will be assigned to Bank by Dealer without recourse, Dealer promises and agrees to repurchase from Bank contracts, including those executed or assigned on or subsequent to July 1st, 1950 on all such repossessed automobiles by paying Bank therefor the unpaid balance owing on such defaulted contracts, including all sums of principal, interest, charges due and to become due, and any and all collection and repossession costs, less a pro rata rebate of Bank's unearned charges. Dealer hereby waives the provisions of Section 2845, 2849 and 2850 of the Civil Code of the State of California.

\* \* \* \* \* \* \*

10. Bank may retain from the proceeds of each contract purchased hereunder, agreed upon amounts and the accumulated total of said amounts shall be retained by Bank in a Dealer Reserve Account as security for any and all obligations of Dealer to Bank, now or hereafter existing. Bank agrees, so long as Dealer shall not be in default to Bank and remains solvent and in the automobile business, to return to Dealer every six months, upon request, any amount in said account in excess of 10% of the then aggregate unpaid balances of said contracts, provided that before any releases are made to the Dealer that a 100% reserve is set up for all repossessions, skips and past due accounts which are more than 35 days delinquent. If this agreement be terminated or Dealer discontinues the discounting of contracts, then Bank shall retain all funds in said Reserve Account until all contracts, purchased by Bank from Dealer shall have been paid in full, whereupon, the balance if any, shall then be paid to Dealer.

11. This Agreement may be terminated at any time by either party upon notice in writing to the other, provided, however, that such termination will not impair or effect [sic] the liability or obligations of Dealer to Bank under this Agreement on account of any contract purchased or transaction originated prior to the time such notice is given.

The bank did not give any consideration to the fair market value of any contract in purchasing it from the partnership. However, the credit of the purchaser of the automobile is checked by the bank and the sale of the car does not become final until the bank approves the credit.

The following example is typical, except for the amounts, of the conditional sales contracts entered into between the partnership and the purchasers of used cars during the year 1950:

1. Cash purchase price_____ $2,795.00
2. Sales tax_____ 83.85
3. Total cash purchase price_____ 2,878.85
4. Less: Downpayment_____ 1,645.85

5. Unpaid cash purchase price_____ 1,233.00
6. Add: Motor vehicle tax_____ 40.00

7. Unpaid balance_____ 1,273.00
8. Add: Time-price differential_____ 143.15
    (Finance charges or interest)
9. Contract balance_____ 1,416.15

Upon assignment of a contract containing the figures in the example above set out the bank would immediately pay to the partnership the amount of $1,233 shown as item 5 and designated "Unpaid cash purchase price." Item 6 in the amount of $40, representing motor vehicle tax, would be paid by the bank either to the partnership or directly to the Department of Motor Vehicles dependent upon whether the partnership or the bank cleared the title to the car. Item 8, designated as "Time-price differential," consisted of finance charges or interest, and was variable depending upon what the partnership saw fit to charge the purchaser. At the time of assignment of contracts by the partnership the bank computed its discount at an agreed percentage of the "Contract balance" which, in the above example, is $1,416.15. The rate of discount used in 1950 was 4 per cent per year. In the above example the discount would amount to $70.90 inasmuch as the contract was to run for a period of 15 months. In addition to the discount the bank made a flat charge of $5 on each assigned contract. The bank treated the $5 as earned discount and the $70.90 as unearned discount. The remainder of the contract balance not paid over in cash to the dealer would be credited to the dealer's reserve account provided for in the above-quoted agreement. In the example the difference between $75.90, representing the bank's discount, and the $143.15, representing the "Time-price differential," namely $67.25, is the amount which would be so credited.

The entries in the dealer's reserve account on the books of the bank were recorded by the partnership in a memorandum account. The partnership did not record such entries in a general ledger account nor did it reflect them in any of its financial statements. The bank informed the partnership of entries made in the reserve account and periodically sent the partnership statements showing the balance in such account.

Purposes of the bank in maintaining the dealer's reserve account were to provide security for the payment of the assigned contracts

and to induce the dealer to discount contracts with it. The dealer's purpose in entering into the arrangement with the bank was to secure necessary financing for its operations.

During the year 1950 some of the purchasers under contracts which the partnership had assigned to the bank paid off the contracts prior to their normal maturity dates and accordingly under applicable State law [1] were not obligated to pay the entire sum designated "Time-price differential," but only a lesser sum. In these circumstances, the bank debited the reserve account for the portion of the sum that was no longer due from the purchaser.

In the above example of a 15-month contract, if the purchaser paid up the contract in 6 months, the bank would reduce the amount of the time-price differential by the sum of $44.20 of which $22.83 would be entered in its unearned discount account and $21.37 would be charged to the dealer's reserve account.

The following schedule sets forth, with respect to some of the contracts assigned by the partnership to the bank, the date and amount of the original credits by the bank to the reserve account, and the dates and amounts of the debits to such account in instances of prepayments by the purchasers of cars:

| Credits to reserve account | | Debits to reserve account | |
| --- | --- | --- | --- |
| *1950* | *Amount* | *1950* | *Amount* |
| January 21 | $29.90 | February 17 | $19.90 |
| March 27 | 15.40 | June 3 | 2.20 |
| June 1 | 106.00 | June 15 | 88.32 |
| May 27 | 49.35 | July 20 | 30.00 |
| June 20 | 52.24 | June 29 | 52.24 |
| April 14 | 84.21 | August 10 | 56.01 |
| July 14 | 50.80 | August 16 | 37.53 |
| August 2 | 107.57 | August 18 | 94.37 |
| August 4 | 211.55 | August 29 | 153.40 |

[1] Section 2982 of the California Civil Code Ann. (West) provides in part as follows:

(c) Time price differential; limit. The amount of the time price differential in any conditional sale contract for the sale of a motor vehicle, with or without accessories, shall not exceed 1 percent of the unpaid balance multiplied by the number of months, including any excess fraction thereof as one month, elapsing between the date of such contract and the due date of the last installment, or twenty-five dollars ($25), whichever is greater, provided that such contract may provide for interest on any delinquent installment from and after the date of delinquency, and for reasonable collection costs and fees in the event of delinquency.

(d) Payment before maturity; refund credit. Any provision in any conditional sale contract for the sale of a motor vehicle to the contrary notwithstanding, the buyer may satisfy in full the indebtedness evidenced by such contract at any time before the final maturity thereof, and in so satisfying such indebtedness shall receive a refund credit thereon for such anticipation of payments. The amount of such refund shall represent at least as great a proportion of the time price differential, after first deducting from such time price differential a minimum charge of not to exceed twenty-five dollars ($25), as the sum of the periodic time balances after the month in which such contract is paid in full bears to the sum of all of the periodic time balances under the schedule of payments in the contract, both sums to be determined according to the monthly balances which would result if the indebtedness were paid according to the terms of the contract; provided, however, that the provisions of this subsection shall not impair the right of the seller or his assignee to receive a minimum time price differential of twenty-five dollars ($25), or to receive interest on delinquent installments or reasonable collection costs and fees, as provided in subsection (c) of this section; and provided further, that where the amount of such refund credit would be less than one dollar ($1), no refund need be made.

The above schedule is merely illustrative and does not set forth all instances where prepayments were made by purchasers.

In determining whether a dealer was entitled to withdraw any amount from the reserve account the bank deducted from the amount of the reserve the full amount of the partnership's recourse liability on any delinquent accounts and repossessions. During the year 1950 the credit balance in the reserve account of the Art Morgan Motor Company, reduced on account of delinquencies and repossessions, never exceeded 10 per cent of the aggregate unpaid balances of the contracts that had been assigned by the partnership to the bank. The partnership was not entitled to receive and the bank was not required to make, and did not make, any payments to the partnership in pursuance of the terms of the agreement in paragraph 10 of the agreement above quoted. At all times material the bank was financially sound and was able to pay any amount due to the partnership.

During the taxable year the credits to the reserve account totaled $16,895.08, and the debits thereto totaled $1,130.76, leaving a credit balance of $15,764.32 at the end of the year.

The partnership did not report as income for the period in question any of the credits to the reserve account or any of the $15,764.32 credit balance therein; nor did it report any of the debts as a deduction. The partnership did not claim a bad debt deduction for the taxable year in question.

In determining the deficiency, the respondent increased the partnership's income for the taxable year 1950 by the sum of $15,764.32, representing the credit balance in the reserve account as of the end of the taxable period 1950, and as a consequence increased the petitioner's distributive share of the income of the partnership. The respondent also held that the $15,764.32 item did not constitute a deductible item to the partnership under any provision of the Internal Revenue Code of 1939.

#### OPINION.

The sole question presented is whether the amount of the credit balance in the dealer's reserve account on the books of the bank at the end of the taxable period constituted gross income to the dealer partnership in that period.

When the partnership sold an automobile under a conditional sales contract, the purchaser obligated himself to pay in installments over a specified time a contract balance which included not only the selling price of the car (after deducting the downpayment) but a time-price differential composed of finance charges or interest. The partnership then assigned to the bank all its right, title, and interest in the contract, including its security interest in the automobile. The bank immediately paid the partnership an amount equal to the remaining un-

paid purchase price of the car and credited the remainder of the contract balance, after subtracting its discount (which consisted of a flat charge and a percentage of the contract balance), to the dealer's reserve account. The partnership, in consideration of such credit, guaranteed full performance of the sales contract. It would become liable as guarantor in the case of any defaults. In the case of any repossessions by the bank, the bank was to deliver the repossessed cars to the partnership and the partnership agreed to repurchase the contracts on all such repossessed automobiles by paying the bank the unpaid balance owing on the defaulted contracts, including all sums of principal, interest, charges due and to become due, less a pro rata rebate of the bank's unearned charges.

The partnership had the right to receive, every 6 months, upon its request, any amount in the reserve account in excess of 10 per cent of the then aggregate unpaid balance of contracts. Upon termination of the agreement between the partnership and the bank, the partnership was entitled to receive the amount of the reserve at such time as all contracts were paid in full.

The respondent has determined that the total credit balance in the dealer's reserve account as of the end of the taxable period constituted income to the partnership. This was the partnership's first taxable period and the total amount of the reserve at the end of the period therefore represented the net addition thereto. Under similar circumstances we have held, in a number of cases involving taxpayers who maintain their books and return their income on an accrual method of accounting, that this treatment is correct. *Shoemaker-Nash, Inc.*, 41 B. T. A. 417; *Albert M. Brodsky*, 27 T. C. 216; *Texas Trailercoach, Inc.*, 27 T. C. 575 (on appeal C. A. 5); and *West Pontiac, Inc.*, 27 T. C. 749 (on appeal C. A. 5).

The petitioners contend that our prior cases were not correctly decided, but alternatively contend that the instant case is factually distinguishable from such prior cases. They contend that there was not an unqualified obligation on the part of the bank to pay the partnership the full amount credited to the dealer's reserve, since, under the law of California, the purchaser of an automobile has a right, upon the satisfaction of his contract prior to maturity, to a rebate (or to be relieved of payment) of a portion of the time-price differential, in which case a debit is made to the dealer's reserve account of a proportionate part of such time-price differential. They claim that the credit is nothing more than a bookkeeping entry of an amount which may at some time become payable, that it is a mere potential liability (apparently of the bank), and that since the amount payable has not become fixed it is not properly accruable. They also contend, apparently alternatively, that the arrangement between the

partnership and the bank is in the nature of a joint venture in which the parties are to share the time-price differential when "earned."

The agreement between the partnership and the bank does not specifically deal with the liabilities of the parties in the event of the satisfaction of a purchaser's liability prior to maturity of his obligation, but the testimony is that in such a case the reserve is debited in the amount of a portion of the time-price differential.

We see no essential difference between this case and those which we have previously decided. Here, as in such previous cases, the reserve was designed to protect the finance company and the amount therein at any particular time could redound to the partnership's benefit through discharge of its guaranty obligations to the bank. Here also the amount of the reserve in excess of a percentage of the aggregate unpaid contract balances is payable to the partnership and the partnership is entitled to the entire balance in the reserve if and when all the contracts are paid in full. Under these circumstances, we think the partnership's right to receive the net amount of the addition to the reserve during the taxable period became fixed, requiring its accrual by the partnership, under the principle of *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. The case of *Albert M. Brodsky*, *supra*, is closely in point, since there the dealer's reserve was made up of credits representing the difference between the bank's discount rate and the "contract carrying charge," which in this case is called the "time-price differential."

We do not agree with the petitioners that the arrangement between the partnership and the bank was in the nature of a joint venture in which each was to share in the time-price differential as it was "earned." Actually the bank was making a specific charge and its income from the transaction was limited to that amount. As we view the relationship between the partnership and the bank, the bank undertook an obligation to satisfy the full amount of the contract balance, less its discount consisting of its specific charge and a percentage of the total contract balance. It satisfied that obligation by payment immediately of the remaining unpaid selling price of the car in cash to the partnership and by setting up a reserve for the balance. The amounts credited to the reserve were payable to or on behalf of the partnership in the manner described above. The obligation of the bank to the partnership was an accrued liability at that time. The mere fact that payment of the portion that went into the reserve account was postponed does not affect its accruability in the year in which the credit was made. And the possibility that subsequent prepayments by purchasers of cars would reduce the amount in the reserve does not affect the accruability since such reduction would be the consequence of a condition subsequent.

The petitioners contend that if the respondent's determination is approved the result is that they will be taxed on income which they may never receive. However, since the reserve as of the end of the taxable period has been reduced on account of prepayments of contracts during the period, it is clear that insofar as those contracts are concerned the petitioners will not be taxed on income which they will never receive. Furthermore, if any of the other contracts are prepaid during the next taxable year, debits on account thereof will serve to offset otherwise taxable income represented by credits to the reserve account.

If the partnership sustains losses on account of its guaranty of contracts, the question then becomes one of deduction which is not involved in this proceeding. *Spring City Foundry Co.* v. *Commissioner, supra.*

The petitioners rely upon *Johnson* v. *Commissioner,* (C. A. 4) 233 F. 2d 952, which reversed our decision in *Blaine Johnson,* 25 T. C. 123. However, here, as in our previous cases cited above, with due deference to the Court of Appeals for the Fourth Circuit, we feel compelled to adhere to our previous decisions.

*Decision will be entered for the respondent.*