Edward C. Cadjew and Vivian L. Cadjew v. Commissioner.
Cadjew v. Commissioner
Docket No. 59535.
United States Tax Court
T.C. Memo 1959-148; 1959 Tax Ct. Memo LEXIS 99; 18 T.C.M. (CCH) 641; T.C.M. (RIA) 59148; July 20, 1959
*99 The petitioner, an automobile dealer in California, sold conditional sales contracts to a bank which credited to petitioner's "dealer reserve account" a "holdback", and the portion of a "time price differential" of each contract, which was in excess of the bank "discount." The entire "dealer reserve" was liable for all of the petitioner's outstanding contingent liabilities as guarantor of the conditional sales paper. The petitioner concedes the "holdback" is accruable and taxable in the year credited. Held, that the portion of the "time price differential" is likewise taxable. Commissioner v. Hansen, 360 U.S. 446, Arthur V. Morgan, 29 T.C. 63. Alfred E. Holland, Esq., for the petitioners. Nat F. Richardson, Esq., for the respondent. LEMIRE Memorandum Opinion LEMIRE, Judge: The Commissioner determined deficiencies of $11,318.19 in income tax for 1953. All of the facts in the case have been stipulated and are found as stipulated. The petitioners are husband and wife who operated a retail trailer sales business in Sacramento, California. They kept their books and filed their Federal income tax returns on an accrual method of accounting. *100 They sold trailers on credit in transactions in which they received conditional sales contracts. The petitioners charged the purchasers a finance or carrying charge. The conditional sales contracts were sold to a bank under an agreement to this end. The bank paid the petitioners in cash the agreed discounted amount for the contract less an amount equal to 6 per cent of the cash sales price of the trailer. The bank set up a dealer reserve account which it designated as "holdback and special reserve account" equal to the 6 per cent of the cash unpaid sales price of the trailer. The petitioners guaranteed the payment of any contract they sold the bank if the purchaser defaulted and the reserve account was security for any losses on defaulted contracts or any obligations of the petitioner to the bank. The reserve account represented a "rate differential" being the difference between the additional charge the dealer had imposed upon the buyer by including it in the contract price, and the discount rate that the bank required of the dealer. If this differential was not equal to the 6 per cent, the balance was a "holdback" charge. The written agreement did not provide that the petitioners *101 would receive any disbursements from the bank's reserve account, but it was orally agreed that once the amount in the reserve equaled 15 per cent of the outstanding contingent liability of the petitioners as guarantors of the conditional sales contract held by the bank disbursements might be made to the petitioners from this account. In 1953 the total amount in the reserve account did not exceed 15 per cent of the dealer's contingent liability on the reserve account. On the satisfaction of all of the petitioners' liabilities to the bank, the balance in the reserve was to be paid to them. In 1953 the "holdback and special reserve account" had an increase of $5,510.75, and the rate differential account had an increase of $19,985.52. None of the amounts credited to the "holdback and special reserve accounts" were reported by the petitioners in their gross income. The petitioners concede that the portion in the reserve account represented by the "holdback" charge was income to them in 1953. They argue that the "rate differential" was not taxable income to them in 1953 because under section 2982 of the California Code a buyer of a trailer on a deferred purchase arrangement who pays *102 off the contract price prior to final maturity date is entitled to a proportionate credit for the amount of the price charged because of a deferred payment date. They contend that the "rate differential" portion of the dealer's reserve account represented the dealer's share of the finance charge and if a trailer buyer paid off his contract before the time it was due, the petitioners' share as a dealer of the finance charge would never become due under the California statutory provision. Except for this distinguishing feature, the petitioners concede that their case is substantially the same as that of , reversed, . However, this Court in , has concluded that the California statute here relied upon by the petitioner did not alter the rule adopted by the Tax Court in this type of case. It held that all of the reserve was designed to protect the finance company and at any time it could redound to the dealer's benefit through discharge of the guaranty obligation to the bank. It also noted tha the dealer was entitled to the entire balance in the reserve if and when all the contracts *103 were paid in full, and that the dealer's right to receive the amount of the addition to the reserve was fixed during the tax period and therefore it was required to be accrued. Morgan cannot be distinguished from this case. The Tax Court's consistent position that an accrual taxpayer must accrue the amounts withheld and credited to a "dealer's reserve" by the finance company or bank for the purpose of providing collateral for the taxpayer's contingent liability, has been recently sustained by the Supreme Court of the United States in , reversing (C.A. 9), reversing on this issue a Memorandum Opinion of this Court [; , reversing (C.A. 8), reversing a Memorandum Opinion of this Court [; and , affirming (C.A. 7), affirming a Memorandum Opinion of this Court [. The Supreme Court did not pass upon the taxpayers' argument that a portion of the reserve *104 account was "finance charges" which were not part of the purchase price and therefore should not be accrued as income because of the absence of evidence delineating the facts. The Tax Court, as above noted, has considered the issue and held that such portions of the reserves as might be finance charges in any event were to cover the dealer's blanket guaranty. In , this Court said: "We do not agree with the petitioners that the arrangement between the partnership and the bank was in the nature of a joint venture in which each was to share in the time-price differential as it was 'earned.' Actually the bank was making a specific charge and its income from the transaction was limited to that amount. As we view the relationship between the partnership and the bank, the bank undertook an obligation to satisfy the full amount of the contract balance, less its discount consisting of its specific charge and a percentage of the total contract balance. * * *" The dealer was required to accrue those additions to the reserve. See also, ; (C.A. 6) (April 24, 1959), *105 affirming a Memorandum Opinion of this Court [; and . On the authority of the above cited cases, Decision will be entered for the respondent.