KLIMATE MASTER, INC. d.b.a. Klimate Master Pools, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Klimate Master, Inc. v. Commissioner
Docket No. 9285-78.
United States Tax Court
T.C. Memo 1981-292; 1981 Tax Ct. Memo LEXIS 451; 42 T.C.M. (CCH) 85; T.C.M. (RIA) 81292; June 16, 1981. William C. Oldfield, for the petitioner. Mary Helen Weber, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency in petitioner's income taxes of $ 10,376.06 and $ 11,377.13 for the taxable years 1973 and 1974 and an addition to tax pursuant to section 6651(a)[1] of $ 568.85 for the taxable year 1974 for willfully neglecting to timely file a Federal income tax return. Concessions having been made by petitioner, the issues remaining are whether certain contingent reserves are includible in petitioner's gross income in the year in which such reserves are credited to petitioner's account during the years in which petitioner employed the accrual method of accounting, and, if so, whether such reserves credited to petitioner during the years in which petitioner employed the cash receipts and disbursements method of accounting are so includible in the year in which petitioner changed its method of accounting. *453 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner is a Kentucky corporation with its place of business in Newport, Kentucky, at the time it filed its petition herein. For the taxable years in issue, petitioner filed its Federal income tax returns with the Internal Revenue Service Center at Memphis, Tennessee. During 1971 and 1972, petitioner was a cash basis taxpayer and filed its returns accordingly for those years. During 1973 and 1974, petitioner was an accrual basis taxpayer and filed its returns accordingly for those years. [2]
Since its inception in 1971, petitioner's principal business has been the construction of in-ground cement swimming pools. During the period 1971 through 1974 (hereafter the "years involved"), petitioner sold a number of swimming pools under installment sales contracts, approximately one-half of which were financed through the First National Bank of Cincinnati (First National). Petitioner did not finance any installment sales itself, *454 and if a customer desired financing but was unable or unwilling to obtain outside financing, petitioner would suggest First National. If First National approved a customer's credit, the customer would execute an installment sales contract and promissory note in favor of petitioner. The total amount due on the note would be the cash price of the pool (less the down payment, if any) plus a number of other charges for insurance protection, credit checking, and interest. [3] Petitioner would immediately assign the promissory note to First National in exchange for a payment equal to the total cash price of the pool (less any down payment). Each time petitioner assigned a promissory note to First National, First National credited a fraction of the interest due on the note to a "contingent reserve account" which it kept in petitioner's name. [4] Petitioner could only withdraw funds from its contingent reserve account or pledge the account as security if either of two situations obtained: (1) if at any *455 time the amounts credited to the contingent reserve exceeded 20 percent of the unpaid principal financed for petitioner by First National, and if petitioner was at such time still in business, then petitioner was entitled to withdraw such excess; and (2) if petitioner went out of business, petitioner could withdraw the entire amount credited to its contingent reserve account once all outstanding promissory notes had been paid in full. At the time of trial in the instant case, petitioner was still in business and had never been entitled to withdraw any funds from the contingent reserve account. [5]
Petitioner guaranteed payment on the promissory notes which it assigned to First National by agreeing to repurchase any note upon which a customer defaulted. *456 Upon such repurchase, petitioner's contingent reserve account with First National would be debited in an amount equal to the unpaid principal and interest due on the defaulted note. In addition, if a customer prepaid a note, petitioner's contingent reserve account would be debited an amount equal to the interest which had been credited but would never be paid. [6]
Petitioner indefinitely warranted its product to the original purchaser. In addition, petitioner promised First National that if any customer alleged breach of warranty as a reason for defaulting on a promissory note, petitioner would either repair the pool to the customer's satisfaction or pay First National to hire another to do so. *457 Were any such payments called for, no actual transfer of funds would be made if the amounts credited to petitioner's contingent reserve account were sufficient to cover the expense; in that case, the account would be debited in the amount of the payment owed. Petitioner never included the amounts credited to its contingent reserve account in its gross income. Petitioner never withdrew funds from its contingent reserve account nor pledged the account as security. Petitioner could never reasonably anticipate when it might be entitled to funds from the contingent reserve account, nor approximate their amount. First National never segregated funds for petitioner's reserve account nor gave it a savings or checking account number -- the credits and debits to the contingent reserve account were only bookkeeping entries. OPINION At the outset, we can readily dismiss two arguments advanced by petitioner. First, petitioner contends that, in 1973 and 1974, it utilized a hybrid method of accounting in which all of its activities, other than that relating to the reserve account, were reported on the accrual basis with the reserve account being reported on a cash basis. It supports its *458 contention with respect to the separate treatment of the reserve account on the basis that the credits to that account were amounts representing compensation for services rendered to First National as the latter's agent in making financing arrangements with customers and consequently constituted a separate trade or business within the meaning of section 1.446-1(c)(1)(iv)(b), Income Tax Regs. As to this first line of argument, we need only observe that it is directly contrary to the stipulation of facts and we find the record herein totally insufficient to provide any basis for relieving the petitioner of the consequences of its stipulation. See Rule 90(e), Tax Court Rules of Practice and Procedure. Moreover, even if we were to grant petitioner such relief, it would still be faced with the problem that, as far as this record shows, it failed to obtain the requisite permission of respondent to change from its cash basis of reporting income during the years prior to 1973 and otherwise comply with the necessary conditions of the statute and the regulations. See section 442 and the regulations thereunder. As a second argument, petitioner makes the separate contention that it performed *459 services for First National as the latter's agent in return for the credits to the reserve account, that this activity constituted a separate trade or business and that therefore the treatment of that account should fall outside the ambit of Commissioner v. Hansen, 360 U.S. 446 (1959), and its antecedents and progeny. We find this argument to be totally without merit. The record herein clearly reveals that petitioner was in one trade or business, i.e., selling swimming pools, and that the relationship between petitioner and First National was purely one of financing of the obligations of petitioner's customers to it. The dichotomy suggested by petitioner simply did not exist. Accordingly, we turn to the questions relating to the proper treatment of the reserve account in the context of the financing arrangements between petitioner and First National. Respondent urges a two-step argument. First, he contends that because petitioner was an accrual basis taxpayer during 1973 and 1974, it must include in its gross income the accounts credited to its contingent reserve account during those years. Second, respondent does not contest petitioner's assertion that the *460 credits to petitioner's contingent reserve account were properly not included in petitioner's gross income before 1973 because petitioner was then on the cash basis, and the credits had not been actually or constructively received. See section 1.446-1(c)(1)(i), Income Tax Regs. However, respondent contends that petitioner's change in method of accounting will have the effect of forever excluding the pre-1973 credits from petitioner's gross income because these credits were accruable when petitioner was on the cash basis and will be received while petitioner is on the accrual basis -- petitioner's change in method of accounting, so respondent asserts, closed the barn door only after the horse had left. Accordingly, respondent calls upon the authority given him by section 481 to require petitioner to include the early credits in a later taxable year, to wit, 1973. Petitioner argues that the credits made to its contingent reserve account during the early years are not properly before this Court because respondent failed to assert the applicability of section 481(a) in his Notice of Deficiency. We think this contention is without merit. The Notice of Deficiency is replete with references *461 to section 481(a)(2) and (b)(1), and in fact the Notice includes a detailed computation pursuant to that section. Petitioner, thus, plainly had notice of respondent's section 481 claim. We agree with respondent that if he succeeds on the first prong of his argument, he must succeed on the second as well: the application of section 481 to the facts at hand (assuming respondent's success on the first prong) is clear, and petitioner has not argued otherwise. Therefore, we turn to the first prong, namely, whether credits made to petitioner's contingent reserve account were properly accruable during the year when credited by First National. The proper year of inclusion for an accrual basis taxpayer has repeatedly been addressed by the Supreme Court. See Commissioner v. Hansen, supra; Spring City Co. v. Commissioner, 292 U.S. 182 (1934); Brown v. Helvering, 291 U.S. 193 (1934); North American Oil v. Burnet, 286 U.S. 417 (1932). We think those cases go a long way toward resolving the case at bar. There can be no question that an accrual basis taxpayer must include in his gross income any amounts he has *462 a right to receive, Spring City Co. v. Commissioner, supra at 184-185, even though there is a possibility of forfeiture, Brown v. Helvering, supra at 199. However, it is equally clear that until such a taxpayer earns an amount of money, absent payment, there can be no inclusion because there can be no such right. See sections 1.446-1(c)(1)(ii) and 1.451-1(a), Income Tax Regs.
It is the settled rule that interest is properly accrued as it is earned over time. Luhring Motor Co. v. Commissioner, 42 T.C. 732, 741-743 (1964); see Rev. Rul. 67-316, 1967-2 C.B. 171. Had petitioner retained its customer's notes rather than sold them to First National, there is no question that petitioner would not have had to accrue the interest on those notes until petitioner obtained a fixed right to receive it, see section 1.446-1(c)(1)(ii), Income Tax Regs., that is, until the interest became due. See Rev. Rul. 72-100, 1972-1 C.B. 122, 123. However, petitioner did in fact sell the notes and received at the time of such sales a credit to its contingent reserve account in the full amount of its share of the interest, *463 see note 4 supra, even though none of the interest was yet due and might never be paid or owned, see note 6 supra. In Commissioner v. Hansen, supra, the Supreme Court held that, when part of the purchase price (rather than part of the finance charge) is credited to a reserve account in transactions such as those involved herein, the credit is fully accruable when made. Because the seller of the note would eventually either receive the credit in cash or else have it used to discharge a customer default which he had guaranteed, the Court held that -- It would therefore seem that funds in the dealer's reserve which are applied to the payment of his obligations to the finance company are as much "received" by him as those which the finance company pays to him in cash. [360 U.S. at 465-466] Petitioner's argument to the contrary notwithstanding, we think this rationale is as applicable to credits attributable to interest as to credits attributable to part of the product's purchase price. This precise issue was admittedly left undecided in *464 Hansen, see 360 U.S. at 468-469, but has since been addressed by several lower courts. [7] Our view was expressed in General Gas Corp. v. Commissioner, 33 T.C. 303 (1959), affd. 293 F.2d 35 (5th Cir. 1961), in which we reaffirmed the position we had taken pre-Hansen in Morgan v. Commissioner, 29 T.C. 63 (1957), affd. 277 F.2d 152 (9th Cir. 1960). In those cases, we recognized that once credits of finance charges are made to a dealer's reserve account, they become available to satisfy the dealer's liabilities incurred as guarantor of customer obligations and are included in the dealer's income even though the credits are attributable to interest as yet unearned and even though the amount of the credits are subject to diminution because of customer defaults and, in Federated Department Stores, Inc. v. Commissioner, 51 T.C. 500, 505 (1968), affd. 426 F.2d 417 (6th Cir. 1970), we reached the same conclusion even though, as is the case herein, see note 6 supra, the reserve account was subject to diminution as a result of customer prepayments.[8] We are unpersuaded by petitioner's *465 efforts to distinguish General Gas Corp. v. Commissioner, supra, and Morgan v. Commissioner, supra, especially insofar as such efforts are founded upon the argument that the reserve account represented separate compensation for services. See p. 8, supra. We hold that the credits must be included by petitioner in its gross income in the year when first credited by First National. Such being the case, as we have previously concluded, see p. 10, supra, respondent is entitled to apply section 481 with respect to the inclusion in petitioner's income for 1973 the amount of the credits *466 not reported in 1971 and 1972. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the the taxable years in dispute.↩
2. The record does not reveal whether petitioner obtained the permission of respondent to change its method of accounting. Sec. 442 and the regulations thereunder.↩
3. Until December of 1973, the interest rate on First National financed installment sales was 6 percent; it was increased to 7-1/2 percent that December or shortly thereafter.↩
4. When the interest rate on the notes was 6 percent, petitioner was credited with 1 percent. When the interest rate was 7-1/2 percent, petitioner was credited with 1-1/2 percent. See note 3, supra↩. 5. Between September 30, 1971, and March 31, 1975, the amount credited to petitioner's contingent reserve account did not exceed 8.93 percent of the aggregate unpaid balances due First National on the assigned promissory notes.↩
6. The promissory notes provided that the customer could repay the principal amount at any time. A $ 10 to $ 25 "acquisition charge" would be imposed because of the prepayment, and all unaccrued ("unearned") interest would be waived. The amount of interest allocable to each monthly payment was computed according to the "Rule of 78's," see Rev. Rul. 72-100, 1972-1 C.B. 122, a sum-of-the-digits method analogous to that described in section 1.167(b)-3, Income Tax Regs.↩
7. See Shapiro v. Commissioner, 295 F.2d 306 (9th Cir. 1961), affg. a Memorandum Opinion of this Court, T.C. Memo. 1959-151; General Gas Corp. v. Commissioner, 293 F.2d 35 (5th Cir. 1961), affg. 33 T.C. 303 (1959); Morgan v. Commissioner, 277 F.2d 152 (9th Cir. 1960), affg. 29 T.C. 63 (1957); Krell Buick, Inc. v. Riddell, an unreported case ( S.D. Cal. 1960, 5 AFTR 2d 1417↩, 60-2 USTC par. 9453). 8. See also Hamel v. Commissioner, T.C. Memo. 1960-121↩.